FILED

2022 Mar-14  PM 04:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

**CRAIG SMITH,**
                Plaintiff,

**v.**                                      **Case No. 4:20-cv-1114-CLM**

**KILOLO KIJIKAZI,**
**Acting Commissioner**
**of the Social Security**
**Administration,**
                Defendant.

## MEMORANDUM OPINION

Craig Smith seeks disability, disability insurance, and Supplemental Security Income ("SSI") from the Social Security Administration ("SSA") based on several impairments. The SSA denied Smith's application in an opinion written by an Administrative Law Judge ("ALJ"). The SSA's Appeals Council then denied Smith's request for review.

Smith argues: (1) that the ALJ failed to afford proper weight to the opinion of his treating psychiatrist, Dr. Huma Khusro; and, (2) that the Appeals Council erred in denying review without considering an email from Dr. Khusro that Smith submitted to it.

As detailed below, neither the ALJ nor the Appeals Council reversibly erred. So the court will **AFFIRM** the SSA's denial of benefits.

I.   STATEMENT OF THE CASE

A.   Smith's Disability, as told to the ALJ

Smith was 40 years old on his alleged disability onset date. (R. 182). Smith is a high school graduate, but he had to take "a lot of remedial classes" in high school. (R. 228, 40). And Smith has past relevant work as a sandwich maker, stores laborer, and cashier. (R. 55).

In his disability report, Smith alleged that he couldn't work because of a broken clavicle, rebuilt kneecap, and mental health problems. (R. 227). At the ALJ hearing, Smith testified that he suffers from ADHD and feels like he has "the attention span of a rat." (R. 45). Smith also suffers from anxiety and OCD. (R. 45–46). For example, Smith will check to make sure his cat is inside every 10 to 15 minutes, even when he knows no one has recently gone outside. (R. 46). And Smith says that at least once a week he'll suffer from a panic attack. (R. 47).

Smith also has trouble focusing and concentrating. (R. 49). For example, Smith can watch a movie with his wife, but he needs to pause the movie 5 or 6 times for breaks. (*Id.*). And Smith has "never read a book, in [his] life." (R. 50). Smith also has trouble with arithmetic and only knows very basic algebra. (*Id.*).

As for his physical impairments, Smith had surgery on his left leg after breaking his patella. (*Id.*). Since his surgery, Smith hasn't been able to jog or run. (*Id.*). To keep the pain down and keep his mind occupied, Smith constantly walks. (R. 51). Smith also suffers from stiffness, numbness, and tingling in his left arm. (R. 52). So Smith is scared to lift anything over 5 pounds. (*Id.*).

B.   Determining Disability

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| The 5-Step Test | | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| *Determine Residual Functional Capacity* | | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5).

As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis.

### C.    Smith's Application and the ALJ's Decision

The SSA reviews applications for benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Smith applied for disability insurance benefits, a period of disability, and SSI in January 2018, claiming that he was unable to work because of various ailments, including a broken clavicle, rebuilt kneecap, and mental health problems. After receiving an initial denial, Smith requested a hearing, which the ALJ conducted in October 2019. The ALJ ultimately issued an opinion denying Smith's claims in November 2019.

At Step 1, the ALJ determined that Smith was not engaged in substantial gainful activity and thus his claims would progress to Step 2.

At Step 2, the ALJ determined that Smith suffered from the following severe impairments: degenerative joint disease of the right knee, history of open reduction internal fixation (ORIF) for left patellar fracture with subsequent hardware removal, history of left clavicle fracture, adhesive capsulitis of the left shoulder, depressive disorder, recurrent, moderate, generalized anxiety disorder, and passive dependent personality disorder.

At Step 3, the ALJ found that none of Smith's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. So the ALJ next had to determine Smith's residual functional capacity.

The ALJ determined that Smith had the residual functional capacity to perform light work with these added limitations:

- Smith can only occasionally climb stairs and ramps.

- Smith cannot climb ladders, ropes, and scaffolding.

- Smith can only occasionally balance, stoop, kneel, crouch, and crawl.

- Smith needs to avoid jobs requiring frequent reaching overhead with the left upper extremity.

- Smith needs to avoid concentrated exposure to extreme temperatures and vibrations.

- Smith needs to avoid unprotected heights and dangerous moving machinery.

- Smith can understand, remember, and apply simple routine work instructions and concentrate and persist for extended periods to complete simple routine work tasks not requiring a GED reasoning level more than 3.

- Smith needs to avoid frequent intense contact with others; however, he can adapt to a routine work setting where changes are infrequent, well explained, and introduced gradually.

At Step 4, the ALJ found that Smith could not perform his past relevant work. At Step 5, the ALJ determined that Smith could perform jobs, such as housekeeping cleaner, small products assembler, and inspector packer, that exist in significant numbers in the national economy and thus Smith was not disabled under the Social Security Act.

### D.   Appeals Council's Decision

Smith requested an Appeals Council review of the ALJ's decision. As part of his request for review, Smith submitted an email from Dr. Huma Khusro, his treating psychiatrist. (R. 13). The Appeals Council denied Smith's request for review and didn't exhibit this evidence, finding that it "does not relate to the period at issue." (R. 2).

## II.   STANDARD OF REVIEW

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III.   LEGAL ANALYSIS

Smith makes two arguments for why the SSA erred in denying his application for benefits. First, Smith argues that the ALJ failed to afford adequate weight to the opinion of Dr. Khusro. Second, Smith asserts that the Appeals Council erred in denying his request for review. The court will address each argument in turn.

### A.   ALJ's Evaluation of Dr. Khusro's Opinions

Smith first asserts that the ALJ had to afford the opinions of his treating psychiatrist, Dr. Khusro, substantial or considerable weight absent good cause to disregard the opinions. That's the rule that applies to claims filed before March 27, 2017. But Smith filed for disability benefits and SSI in January 2018. And under the regulations that apply to claims filed on or after March 27, 2017, an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." *See* 20 CFR § 404.1520c(a).

1. <u>Applicable legal framework</u>: Smith concedes that the new regulations no longer require an ALJ to defer to a treating physician's opinion. But he argues that these new regulations didn't abolish Eleventh Circuit precedent on the treating physician rule. As this court has recently

explained, the Social Security Act allowed the Commissioner to implement regulations that did away with the treating physician rule. *See Douglas v. Saul*, 2021 WL 2188198, at \*4 (N.D. Ala. May 28, 2021). In an unpublished opinion, the Eleventh Circuit has agreed that the "new regulatory scheme no longer requires the ALJ to either assign more weight to medical opinions from a claimant's treating source or explain why good cause exists to disregard the treating source's opinion." *Matos v. Comm'r of Soc. Sec.*, 2022 WL 97144, at \*4 (11th Cir. Jan. 10, 2022). And Smith doesn't assert that the 2017 regulations are arbitrary, capricious, or otherwise invalid. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 845 (1984) (courts must defer to validly adopted regulations). The court will thus apply the 2017 regulations—not the treating physician rule—to the ALJ's evaluation of Dr. Khusro's opinion evidence.

Under the new regulations, an ALJ should focus on the persuasiveness of an opinion by looking at the opinion's supportability and consistency. *See* 20 CFR § 404.1520c(b)(2). The ALJ may, but need not, explain how he considered other factors, such as the medical source's relationship with the claimant and specialization, when assessing a medical opinion. *See id.* "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 CFR § 404.1520c(c)(1). And "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 CFR § 404.1520c(c)(2).

2. <u>Dr. Khusro's opinion</u>: Dr. Khusro is a psychiatrist who has treated Smith for several years. In August 2019, Dr. Khusro filled out a medical source statement on Smith's behalf. (R. 674–76). This form required Dr. Khusro to check boxes and write short answers to several disability-related questions. (*Id.*).

According to Dr. Khusro, Smith had no limitations in understanding and remembering simple instructions or in carrying out simple instructions. (R. 674). But Smith was mildly limited in making judgments on simple work-related decisions. (*Id.*). And Smith had marked limitations in understanding and remembering complex instructions. (*Id.*). Dr. Khusro then checked that Smith had extreme limitations in: (1) his ability to carry out complex instructions; and, (2) his ability to make judgments on complex work-related decision. (*Id.*).

As for Smith's ability to interact with others, Dr. Khusro checked that Smith had no limitations in interacting appropriately with the public. (R. 675). But Dr. Khusro stated that Smith's limitations in interacting appropriately with supervisors and coworkers would depend on the nature of the interaction. (*Id.*). Dr. Khusro then responded that Smith has marked limitations in responding appropriately to usual work situations and to changes in a routine work setting. (*Id.*). According to Dr. Khusro, clinical exams supported these limitations and hardware removal surgery related to Smith's knee impairment also restricted Smith's work-related abilities. (*Id.*).

The ALJ found Dr. Khusro's opinion "not entirely persuasive." (R. 26). The ALJ recognized that Dr. Khusro based the opinion on Smith's "surgical intervention with hardware and subsequent removals and clinical exams," but found that the opinion contradicted Dr. Khusro's conservative treatment of Smith. (*Id.*). The ALJ then noted that Dr. Khusro's treatment notes recorded that Smith's "depression was overall stable and despite some occasional bouts of anxiety secondary to family situations and stressors," showed that Smith responded to medication adjustments with good results. (*Id.*). The ALJ also explained that Dr. Khusro's treatment records don't suggest that Dr. Khusro thought Smith's conditions were so severe as to warrant inpatient hospitalization. (*Id.*). Instead, Smith's treatment was conservative with medications adjusted as warranted. (*Id.*). Finally, the ALJ found that other than having diminished concentration and fair insight and judgment at times, Smith's mental status examinations were normal. (*Id.*).

After reviewing the evidence, the court finds that the ALJ reasonably determined that Dr. Khusro's medical source statement wasn't supported by his conservative treatment of Smith and contradicted by Dr. Khusro's treatment notes. As the ALJ explained, Dr. Khusro's treatment of Smith mainly consisted of prescribing and adjusting psychiatric medications. (R. 307, 309, 311, 516, 571, 575, 579, 583, 587–88, 666, 670). And adjusting Smith's medication seems to have produced good results. For example, in May 2018, Smith's depression was stable without crying spells or anhedonia. (R. 569). And though Smith was anxious, he said he had been "doing ok" until he received a letter from social security. (R. 569–70). In response, Dr. Khusro started Smith on Klonopin. (R. 571). In May 2019, Smith said that he was "feeling better" and denied feelings of hopelessness. (R. 665). Though Smith still had an anxious mood and said he was worried about his social security hearing. (R. 665–66).

And a reasonable person could agree with the ALJ's determination that Dr. Khusro's mental status examination findings contradicted the extreme and marked limitations noted in the medical source statement. For example, treatment notes from three days before Dr. Khusro filled out the medical source statement note that Smith was cooperative and made good eye contact. (R. 669–70). Smith also had no abnormal body movements, was capable of abstract thought processes, and had a full range and congruent affect. (*Id.*). Though Smith did appear restless and anxious. (R. 670). He also had limited insight/judgment and diminished concentration. (*Id.*). But Dr. Khusro wrote that Smith had good impulse control, average intelligence, good attention, and grossly intact short and long term memory. (*Id.*). Based on these treatment records, it was reasonable for the ALJ to conclude that the objective medical evidence contradicted Dr. Khusro's medical source statement.

Smith's argument that the ALJ erred focuses on his treating relationship with Dr. Khusro. But a medical source's relationship with a claimant is only one of several factors that ALJs consider when evaluating a medical opinion. *See* 20 CFR § 404.1520c(c)(3). And though Smith asserts that Dr. Khusro's records support his opinion, it's not the court's

job to "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Having reviewed the evidence, the court finds that a reasonable person could conclude, as the ALJ did, that Dr. Khusro's opinion lacked supportability and conflicted with the other record evidence. So substantial evidence supports the ALJ's decision to find Dr. Khusro's opinion "not entirely persuasive."

## B.    Appeals Council's Denial of Request for Review

Smith next challenges the Appeals Council's denial of his request for review. The Appeals Council will review an ALJ's decision if it "receives additional evidence that is new, material, relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 CFR § 404.970(a)(5).

1. <u>Background</u>: After the ALJ issued his hearing decision, Smith submitted a December 2019 email from Dr. Khusro to the Appeals Council as "new evidence" to consider in the first instance. In the email, Dr. Khusro states that Smith has been his patient for several years and suffers from major depressive disorder, generalized anxiety disorder, a borderline intellectual disability, and attention deficit disorder. (R. 13). Dr. Khusro also explained that Smith has had orthopedic issues that have limited Smith's range of motion in his upper extremities and caused difficulty standing. (*Id.*).

Dr. Khusro then said that Smith hasn't been able to work for the last 2 years and that Dr. Khusro understood the ALJ denied Smith's disability claim because he found that Smith's impairments were mild to moderate and not severe. (*Id.*). Dr. Khusro then explained that he disagreed with this determination. (*Id.*). According to Dr. Khusro, "Smith's symptoms are pretty severe and cause significant distress and impairment." (*Id.*). Dr. Khusro then explained that "[i]t is not a single diagnosis but the combination of his multiple diagnosis that cause [Smith's] disability." (*Id.*). Dr. Khusro then said that Smith has limited

problem solving ability because of his intellectual disability, which combined with his focus and concentration issues, anxiety, and depression, "make it very hard for him to function in a vocation." (*Id.*). As Dr. Khusro explained, Smith had tried to undergo vocational training but couldn't. (*Id.*). Finally, Dr. Khusro stated that even though Smith was on medication, his symptoms aren't controlled and "forcing [Smith] to work when he is clearly not able to will worsen his symptoms." (*Id.*).

2. <u>Chronological relevance</u>: Smith first argues that the Appeals Council didn't consider Dr. Khusro's email. But the Appeals Council specifically discussed the email and found that it did "not relate to the period at issue," so "it does not affect the decision about whether you were disabled beginning on or before November 4, 2019." (R. 2). In short, the Appeals Council said that it rejected Dr. Khusro's email because it found it wasn't chronologically relevant. The Appeals Council didn't need to provide a more detailed explanation. *See Hargress*, 883 F.3d at 1309.

"New evidence is chronologically relevant if it relates to the period on or before the date of the ALJ's hearing decision." *Id.* (cleaned up). Dr. Khusro wrote the email after the ALJ issued his hearing decision. But the email describes Smith's condition during the relevant period. For example, the email states that "Mr. Smith has been unable to work for the last 2 years." (R. 13). And tellingly, the Commissioner doesn't dispute that the email is chronologically relevant. Instead, the Commissioner asks the court to find that the Appeals Council didn't need to grant Smith's request for review because the email wasn't material.

The Eleventh Circuit has found similar opinions written after an ALJ's opinion chronologically relevant because the opinions related back to the period before the ALJ's decision. *See, e.g.*, *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1322–23 (11th Cir. 2015). So the court finds the Appeals Council erred when it determined that Dr. Khusro's email wasn't chronologically relevant.

3. <u>Possibility v. probability</u>: That said, the Appeals Council doesn't have to grant review because of chronologically relevant evidence if that

evidence is immaterial. So the court will affirm the Appeals Council's decision to not review new evidence unless the new evidence is both chronologically relevant and material. *See Raices v. Comm'r of Soc. Sec.*, 805 F. App'x 836, 837 (11th Cir. 2020).

Smith argues that to show that Dr. Khusro's email is material he must only establish that there's a reasonable ***possibility*** that the new evidence would change the administrative result. But the SSA's current regulations state that the Appeals Council will grant a request for review based on additional evidence only if "there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 CFR § 404.970(a)(5). And the Appeals Council denied Smith's request for review well after the SSA's current regulations—which use the word "probability"—took effect in May 2017. So the court will apply the reasonable probability standard to Smith's new evidence. *See Clark v. Soc. Sec. Admin., Comm'r*, 848 F. App'x 858, 862 (11th Cir. 2021).

In any event, the Eleventh Circuit has used the terms "reasonable possibility" and "reasonable probability" interchangeably when discussing the Appeals Council's evaluation of new evidence. *See, e.g.*, *Washington*, 806 F.3d at 1321–22. So the court finds there's no material difference between the two standards.

4. <u>Materiality</u>: Smith hasn't shown that there's a reasonable probability that Dr. Khusro's email would have changed the ALJ's decision. As the Commissioner points out, statements that a claimant is disabled or unable to work are "inherently neither valuable nor persuasive." *See* 20 CFR § 404.1520b(c). So the ALJ wouldn't even have needed to analyze Dr. Khusro's statements that: (1) Smith hasn't been able to work for the last 2 years; (2) Smith cannot function in a vocation, and (3) Smith is clearly unable to work. *See id.*

As for the other opinions expressed in Dr. Khusro's email, Smith hasn't explained why the ALJ would find these opinions persuasive. The ALJ recognized in his hearing decision that Smith had attention issues and suffered from both anxiety and depression. So the ALJ gave Smith

several accommodations, including: (1) limiting Smith to completing simple routine work tasks not requiring a GED reasoning level more than 3; (2) requiring Smith to avoid frequent intense contact with others; and (3) making any changes to Smith's routine work setting infrequent, well explained, and gradually introduced. (R. 22). Having reviewed the evidence, the court finds there's no reasonable probability Dr. Khusro's email would have caused the ALJ to include further restrictions on Smith's work-related abilities. That's all the more true because the ALJ had already discounted an opinion from Dr. Khusro that suggested that Smith had extreme mental limitations. In short, Smith hasn't shown that the email from Dr. Khusro was material. So even though the email was chronologically relevant, the Appeals Council didn't have to grant Smith's request for review.

## IV.   CONCLUSION

The ALJ applied the correct legal standards and substantial evidence supports the ALJ's decision, and the Appeals Council did not reversibly err in denying Smith's request for review. So the court will **AFFIRM** the SSA's denial of benefits. The court will enter a separate final order that closes this case.

**Done** on March 14, 2022.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE

13